Eric B. Hull (#291167)
KERCSMAR & O'HARA PLLC
8200 Wilshire Boulevard, Suite 222
Beverly Hills, California 90211
Telephone: (310) 928-7885
Facsimile: (480) 421-1002
ebh@KandOlaw.com

Sean J. O'Hara (pro hac vice to be filed)
KERCSMAR & O'HARA PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
Telephone: (480)421-1001
Facsimile: (480) 421-1002
sjo@KandOlaw.com

Attorneys for Plaintiff

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ART RESEARCH AND TECHNOLOGY LLC,<br><br>Plaintiff,<br><br>v.<br><br>META PLATFORMS INC., F/K/A FACEBOOK INC., and INSTRAGRAM LLC,<br><br>Defendants. | Case No.<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

ART Research and Technology LLC ("ART") for its complaint against defendants Meta Platforms Inc. f/k/a Facebook Inc. ("Meta") and Instagram LLC ("Instagram") (Meta and Instagram together, "Defendants"), alleges as follows:

## NATURE OF THE ACTION

This is a patent infringement action involving patents for online video clipping. The average American spends 2 hours and 27 minutes on social media every day and checks their mobile device 159 times a day. Defendants Meta and its wholly owned subsidiary Instagram have over 2.5 billion active users to their social media platforms. and Defendants generated over $100 billion in revenue in 2022. Since the inception of social media in 1997, the content users share on social media channels has changed dramatically: moving from simple written content (Six Degrees) to an online customizable profile (Myspace) to photosharing (Photobucket) to photos + online profiles + videos (Facebook/Instagram). The next step in social media's evolution is focused on short form videos. 66% of social medial consumers reported short-form video to be the most engaging type of social media content in 2022.[1]

Plaintiff ART holds multiple United States Patents concerning inventions developed by ART's principals. These inventions allow users to create short form videos on social media platforms. ART's inventions also allow social media companies to host short form videos (created from already existing longer videos) virtually, without taking up valuable gigabytes of storage space separate and apart from the original video: virtual clipping. As explained further below, Meta and Instagram have infringed and induced infringement of ART's Patents through certain functions of their Facebook Reels, Instagram Reels, Facebook Clips and Facebook Gaming. ART brings this action to enjoin Meta and Instagram from continuing to infringe its patents and to recover damages adequate to compensate for infringement, including but not limited to a reasonable royalty, and treble damages for Defendants' willful infringement.

## PARTIES

1. ART is an Arizona limited liability company with its principal place of business in Maricopa County, Arizona.

---

[1] https://blog.hubspot.com/marketing/how-video-consumption-is-changing

2. Defendant Meta is incorporated in Delaware and has its headquarters in Menlo Park, California.

3. Defendant Instagram is a Delaware limited liability company that is a wholly owned subsidiary to Meta. Instagram is headquartered in Menlo Park, California.

## JURISDICTION

4. This Court has subject matter jurisdiction over ART's claims under 28 U.S.C. §§ 1331 and 1338(a) because this action is for patent infringement and arises under the patent laws of the United States, Title 35, Sections 271 *et seq.* of the United States Code.

5. As a result of this activity and Defendants' corporate residence in California, this Court has personal jurisdiction over Defendants.

6. Venue is proper in this district under 28 U.S.C. § 1391(b)-(c) because a substantial part of the events or omissions giving rise to ART's claims occurred in this District.

## DIVISIONAL ASSIGNMENT

7. This is an Intellectual Property Action to be assigned on a district-wide basis pursuant to Civil Local Rule 3-2(c) and General Order No. 44.

## FACTS

### ART's Patents

8. In July 2016, the inventors of the innovations embodied by the patents-in-suit founded Kloojj LLC, in Phoenix, Arizona. The inventors recognized the need to share specific portions of video clips, including sharing portions of video clips that were already on the web. As Meta and Instagram have recognized, social media users desire the ability to share portions of videos, through annotations directing friends, followers and other social media users to a specific portion of an existing video.

9. As Kloojj's website explained:

> Kloojj gives users the power to bring social engagement to virtually any web page, web image or even inside web-based videos without

the need to upload clips to your social networks. Clip, tag, save, share and find all your memorable moments while browsing the web.

SAVE AND SHARE CLIPS INSIDE VIDEOS Create Kloojjs (clips) of all the most important moments inside web-based videos. Share Kloojjs by sharing to your friends and followers, by email, or by sharing Kloojjs directly to your favorite social networks. Discuss Kloojjs by adding and responding to comments.

UNCLUTTER YOUR DIGITAL LIFE Organize everything without having to organize anything using Kloojj's unique multi-level tagging system. Finally, a tag that means something!! Create tags that work like your own custom filters to make it fast and easy to find any Kloojjs in seconds. Surf www.Kloojj.com to find and follow the users who create the Kloojjs that matter most.

ANYTIME, ANYWHERE, ANY DEVICE Kloojj works with and syncs across all your devices. You can share video clips, web clips and web images while browsing websites or even using apps like Facebook, YouTube, Vimeo, and many others. Use KloojjCam to create Kloojjs while recording videos from your phone's camera. Kloojj will forever change how you engage with web-based content.

10. Kloojj advertised and promoted its services and products on social media websites. Indeed, videos demonstrating how Kloojj's clipping functionality worked are still available at the following links:

> https://www.youtube.com/@Kloojj/videos
> https://www.youtube.com/watch?v=2Yc9kRbobDg
> https://www.youtube.com/watch?v=CPJQO7Z8m48
> https://www.youtube.com/watch?v=N_elO3sDqB8

11. While Kloojj is no longer operating, Kloojj's use of this ground-breaking technology was open and obvious to anyone with an internet connection.

12. The founders of Kloojj continue to use their innovative technology in connection with their current business, providing cutting edge services that rely on ART's patented technology to individuals and companies in the medical field and beyond.

13. Aside from the benefits given to users, these innovations provide important benefits to the functionality of the systems and networks on which they are employed.

These benefits include, but are not limited to, requiring less data storage and less data bandwidth because users need not create and upload new videos (and thus burden server storage and network bandwidth) to achieve a similar end product.

14. The technology developed by Kloojj is protected by no less than four United States Patents.

15. ART is the assignee of several United States patents and applications, including Patent Nos. 9,451,001 ("the '001 Patent") and 10,084,840 ("the '840 Patent," and together, "the ART Patents"). ART's members are among the listed inventors on the ART Patents. The ART Patents identified here all relate to methods for annotating playable media files and systems for managing and sharing annotations between members of a social network.

16. As further explained below, Meta's products practice the invention disclosed in at least two of the patents identified above, including, but not limited to, Claim 1 of the '001 Patent and Claim 1 of the '840 Patent.

17. Claim 1 of the '001 Patent protects a method and system for annotating Playable Media File in a social network having a plurality of members, like Facebook and Instagram. Claim 1 of the '001 Patent provides:

> 1. A method to annotate Playable Media Files in a social network having a plurality of members, comprising: receiving by a member of said social network a Playable Media File; creating by said member of said social network an annotation relating to said Playable Media File; providing said annotation by said member of said social network to a network server; providing a data profile by said member of said social network to said network server, wherein said data profile comprises a location in said Playable Media File where said annotation should be embedded; embedding by said network server said annotation in the Playable Media File at said location; determining by said network server if said annotation is a first annotation submitted for said Playable media File; if said annotation is not a first annotation submitted for said Playable Media File, encoding said data profile in a previously-created table of contents for said Playable Media File; if said annotation is a first annotation submitted for said Playable Media File: creating a table of contents by said network server for said Playable Media File; encoding by said

> network server said data profile in said table of contents; wherein said Playable Media File is selected from the group consisting of an audio file, a video file, an audiovisual file, slide show, AVI file, MP3 file, MP4 file, WMA file, WAV file, Flash, MPEG file.

A copy of the '001 Patent is attached as **Exhibit 1**.

18. In addition to infringing the '001 Patent, Defendants' products also infringe and/or induce Defendants' users to infringe at least Claim 1 of the '840 Patent.

19. Claim 1 of the '840 Patent protects:

> 1. A method to create and save an annotation associated with a Playable Media File, comprising: receiving a Playable Media File; creating an annotation relating to said Playable MediaFile; providing said annotation to a network server; providing a data profile to said network server, wherein said data profile comprises a location in said Playable Media File where said annotation should be made visible; determining by said network server if said annotation is a first annotation submitted for said Playable media File; if said annotation is not a first annotation submitted for said Playable Media File, encoding said data profile in a previously-created table of contents for said Playable Media File; if said annotation is a first annotation submitted for said Playable Media File: creating a table of contents by said network server for said Playable Media File; and encoding by said network server said data profile in said table of contents; wherein said Playable Media File is selected from the group consisting of an audio file, a video file, an audiovisual file, slide show, AVI file, MP3 file, MP4 file, WMA file, WAV file, Flash, and MPEG file.

A copy of the '840 Patent is attached as **Exhibit 2**.

## **Defendants' Reels Feature Infringes ART's Patents**

20. Defendants offer at least three services that that include features which infringe ART's Patents.

21. Facebook Reels and Instagram Reels both offer users the ability to create short-form video formats complete with music, audio, augmented reality effects, and videos. Users can also "remix" a Reel that is created by another user, editing that Reel to include additional content.

6
COMPLAINT; CASE NO.

22. Reels has been lauded as "the secret to viral growth on Instagram."[2]

23. In launching Instagram Reels in August 2020, Instagram specifically touted the fact that Instagram Reels allowed users to stitch together multiple videos that already existed on the social media website, explaining: "Reels can be recorded in a series of clips (one at a time), all at once, or using video uploads from your gallery."[3]

24. Similarly, when Meta launched Facebook Reels in September 2021, Meta also touted this feature, stating "As you're creating reels on Facebook, you can access a variety of creative editing tools, including: …. Multi-clip: Stitch together multiple clips into a single reel either by recording them together or selecting them from the gallery."[4]

25. By allowing users to include videos in their Reels that have been previously posted to a social media website and/or by allowing users to include portions of live video feeds in their Reels that have been previously posted to a social media website, Facebook Reels and Instagram Reels infringe and/or induce infringement of, at least, the '001 Patent. A claim chart demonstrating how both Facebook Reels and Instagram Reels practice and/or induce users to practice the invention embodied by the '001 Patent is included in the attached **Exhibit 3**.

26. This same functionality also infringes and/or induces infringement of ART's '840 Patent. A claim chart demonstrating how both Facebook Reels and Instagram Reels practice and/or induce users to practice the invention embodied by the '840 Patent is included in the attached **Exhibit 4**.

### Meta's Clips Feature Infringes ART's Patents

27. Facebook Live videos are videos created by users and broadcast on Facebook in real-time.

28. Facebook's website describes "Clips" as "short moments created from your Facebook Live videos."[5]

---

[2] https://later.com/blog/instagram-reels/
[3] https://about.instagram.com/blog/announcements/introducing-instagram-reels-announcement
[4] https://about.fb.com/news/2021/09/launching-reels-on-facebook-us/
[5] https://www.facebook.com/business/help/2967863099960249?id=1123223941353904

29. As Facebook's website states, "Clips" can be created "[d]uring a live video", "[i]mmediately after a live video ends" or "[f]rom published live videos."

30. Facebook's Clips are created from existing videos on the Facebook website.

31. One of the most popular uses of the Facebook's Clip feature is on Meta's Facebook Gaming website.

32. Meta's Facebook Gaming allows users to share gaming experiences in real time. Viewers can interact with gamers during a broadcast through likes, shares and live chat.

33. After a gamer live streams content, Facebook Gaming allows users to create "Clips" from portions of the live stream.

34. Meta describes these "Clips" as "short moments from your longer video gaming streams."[6]

35. Any Facebook Gaming user can create a Clip.

36. Facebook's mobile website describes how users create clips:

1. Select Edit Post on your video
2. Select Video Clipping
3. Set your Clip start and end points
4. Select + Add Clip

37. After you create your Clip, you can find it on the Clips library, edit the title and description and post or boost the Clip. Facebook Gaming touts its "Clips" feature as "One of the best ways to serve [Facebook Gaming's] audience. …. Clips and Stream Highlights help bring your broadcast to life even after the stream has ended."[7]

38. Upon information and belief, more Meta users watch "Clips" that are created from Facebook Live broadcasts than actually view Facebook Live broadcasts in real-time.

39. By allowing users to include videos on their Facebook pages that have been previously posted to a social media website and/or by allowing users to include portions

---

[6] https://www.facebook.com/business/help/56660605051 5360?id=648321075955172
[7] https://www.facebook.com/fbgaminghome/blog/clips-and-stream-highlights-tool

8
COMPLAINT; CASE NO.

of live video feeds in their Clips that have been previously posted to a social media website, Facebook's Clip feature infringes and/or induces infringement of, at least, the '001 Patent. A claim chart demonstrating how both Facebook Clips practices and/or induce users to practice the invention embodied by the '001 Patent is included in the attached Exhibit 3.

40. This same functionality also infringes and/or induces infringement of ART's '840 Patent. A claim chart demonstrating how Facebook Clips practices and/or induce users to practice the invention embodied by the '840 Patent is included in the attached Exhibit 4.

## Defendants Have Willfully Infringed ART's Patents

41. Upon information and belief, Defendants were fully aware of ART's patented virtual clipping technology prior to offering the infringing features of Facebook Reels, Instagram Reels, Facebook Clips and Facebook Gaming discussed above. Indeed, ART's patented technology is still showcased in tutorial videos for anyone to see on YouTube.com. Additionally, ART's Patents are public and there is little doubt that Meta, one of the largest companies in the world, was not aware of these patents prior to offering its virtual video clipping features described above.

42. Despite that Defendants should have been aware of ART's patented technology before they started offering their virtual clipping features, in March 2023, ART provided formal notice to Defendants regarding ART's patented technology and Defendants' infringement of ART's Patents.

43. Defendants did not respond and have not ceased infringement of the ART Patents.

## COUNT ONE: INFRINGEMENT OF THE '001 PATENT

44. ART incorporates by reference the previous allegations in the complaint.

45. The '001 Patent is valid and enforceable.

46. The '001 Patent has been validly assigned to ART.

47. Defendants have, without authority, consent, right, or license, and in direct infringement of the '001 Patent, made, used, offered for sale, and/or sold apparatus protected by the '001 Patent.

48. Defendants have actual notice of the '001 Patent. This notice was provided on each and every of Defendants products that embody the patented invention. Despite having notice of the Patent, Defendants continue to infringe the '001 Patent. Defendants' infringement is willful, intentional, unlawful and, upon information and belief, will continue unless enjoined by this Court.

49. ART has no adequate remedy at law for the harm caused by Defendants' acts.

50. ART has suffered monetary damages in an amount to be proven at trial.

51. ART is entitled to an accounting by Defendants of funds comprising all revenues received through the commercial exploitation of its infringing technology, the imposition of a constructive trust for the benefit of ART for all such funds in the custody or control of Defendants, the assessment of a reasonable royalty for Defendants' use of ART's invention, and to all other damages to which ART may be entitled.

## COUNT TWO: INFRINGEMENT OF THE '840 PATENT

52. ART incorporates by reference the previous allegations in the complaint.

53. The '840 Patent is valid and enforceable.

54. The '840 Patent has been validly assigned to ART.

55. Defendants have, without authority, consent, right, or license, and in direct infringement of the '840 Patent, made, used, offered for sale, and/or sold apparatus protected by the '840 Patent.

56. Defendants have actual notice of the '840 Patent. This notice was provided on each and every of Defendants products that embody the patented invention. Despite having notice of the Patent, Defendants continue to infringe the '840 Patent. Defendants' infringement is willful, intentional, unlawful and, upon information and belief, will continue unless enjoined by this Court.

57. ART has no adequate remedy at law for the harm caused by Defendants' acts.

Kercsmar & O'Hara PLLC
8200 Wilshire Boulevard, Suite 222
Beverly Hills, California 90401
(310) 928-7885

58. ART has suffered monetary damages in an amount to be proven at trial.

59. ART is entitled to an accounting by Defendants of funds comprising all revenues received through the commercial exploitation of its infringing technology, the imposition of a constructive trust for the benefit of ART for all such funds in the custody or control of Defendants, the assessment of a reasonable royalty for Defendants' use of ART's invention, and to all other damages to which ART may be entitled.

## JURY DEMAND

ART requests a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, ART prays for relief and judgment against Defendants, as follows:

A. For a judicial determination and a declaration that the ART Patents are valid and enforceable;

B. For a preliminary and then permanent injunction issued against Defendants, their agents, officers, directors, employees, attorneys, successors, and assigns, all parent and subsidiary entities, and all those acting for or on the behalf of Defendants, or in active concert, participation, or combination with them, including customers and distributors, prohibiting Defendants from:

   i. Continuing acts of infringement of the ART Patents;

   ii. Otherwise infringing the ART Patents.

C. A judicial determination and a declaration that Defendants have infringed the ART Patents under 35 U.S.C. § 271, and final judgment incorporating the same;

D. That an Order issue from this Court requiring Defendants, their officers, agents, servants and employees, to deliver up to this Court for destruction all articles and materials infringing upon the ART Patents and all materials for reproducing such infringing products;

E. That Defendants be required to file with the Court within thirty (30) days after entry of an injunctive order or final judgment a written statement under oath setting forth the manner in which Defendants have complied with the order or final judgment;

F. Directing Defendants to account for, and awarding to ART, all gains and profits realized through, and damages caused by, Defendants' manufacture, production, distribution, circulation, sale, offering for sale, advertising, promotion or display of its products infringing upon the ART Patents, and Defendants' total profit realized thereby;

G. Awarding ART its damages sustained due to Defendants' infringement of the ART Patents;

H. In the alternative, that a reasonable royalty for Defendants' infringement be awarded to ART pursuant to 35 U.S.C. § 284;

I. That, due to Defendants' willful infringement, Defendants be ordered to pay ART treble damages and ART's reasonable attorneys' fees and experts' fees pursuant to 35 U.S.C. § 285;

J. An award of the costs of this action, including pre- and post-judgment interest, pursuant to 35 U.S.C. § 284; and

K. For such other and further relief as this Court deems necessary, just and proper under the circumstances.

DATED this 24th day of May, 2023.

KERCSMAR & O'HARA PLLC

By: *s/ Eric B. Hull*
    Eric B. Hull
    8200 Wilshire Boulevard, Suite 222
    Beverly Hills, California 90211
    *Attorneys for Plaintiff*